FILED
2012 NOV 29 P 2: 49

1  ROBBINS UMEDA LLP
   BRIAN J. ROBBINS (190264)
2  brobbins@robbinsumeda.com
   GEORGE C. AGUILAR (126535)
3  gaguilar@robbinsumeda.com
   LAUREN N. OCHENDUSZKO (274227)
4  lochenduszko@robbinsumeda.com
   MICHAEL J. NICOUD (272705)
5  mnicoud@robbinsumeda.com
   600 B Street, Suite 1900
6  San Diego, CA 92101
   Telephone: (619) 525-3990
7  Facsimile: (619) 525- 3991

8  [Additional Counsel on Signature Page]

9  Attorneys for Plaintiff

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13  CLAIR VANDERSCHAAF, Derivatively on      )   Case No.:  12      6058
    Behalf of OCZ TECHNOLOGY GROUP,          )
14  INC.,                                    )
                                             )
15                     Plaintiff,            )
                                             )
16           v.                              )   VERIFIED SHAREHOLDER DERIVATIVE
                                             )   COMPLAINT FOR BREACH OF
17  RYAN M. PETERSEN, ARTHUR F.              )   FIDUCIARY DUTY, WASTE OF
    KNAPP, JR., RALPH H. SCHMITT,            )   CORPORATE ASSETS, AND UNJUST
18  ADAM J. EPSTEIN, RICHARD L.              )   ENRICHMENT
    HUNTER, and RUSSELL J. KNITTEL,          )
19                                           )
                       Defendants,           )
20           -and-                           )
                                             )
21  OCZ TECHNOLOGY GROUP, INC., a            )
    Delaware corporation,                    )
22                                           )
                   Nominal Defendant.        )
23  _____ )   DEMAND FOR JURY TRIAL

24

25

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

**NATURE OF THE ACTION**

2     1.     This is a verified shareholder derivative action brought on behalf of nominal
3 defendant OCZ Technology Group, Inc. ("OCZ" or the "Company") against certain of its officers
4 and directors for breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.
5 These wrongs resulted in damage to OCZ's reputation, goodwill, and standing in the business
6 community. Moreover, these actions have exposed the Company to hundreds of millions of
7 dollars in potential liability for violations of state and federal law and have jeopardized the
8 Company's continued listing on The NASDAQ OMX Group ("NASDAQ") stock market.

9     2.     This case arises out of the defendants' responsibility for a series of false and
10 misleading statements, including these statements' complete and utter failure to adhere to U.S.
11 Generally Accepted Accounting Principles ("GAAP"). In particular, defendants issued improper
12 statements regarding the Company's business prospects and financial results. As the Company's
13 business weakened, defendants concealed this trend by promising to pay customers massive
14 "incentives" (i.e., rebates) in order to obtain sales. Despite the fact that
15 this ill-conceived (and undisclosed) sales strategy dramatically reduced the Company's profit
16 margins, defendants manipulated the Company's financial statements by improperly accounting
17 for the various discounts offered to customers. In doing so, defendants were able to continue
18 touting a false picture of growing demand and bullish financial guidance for the Company.

19     3.     Following the sudden and unexplained resignation of OCZ's Chief Executive
20 Officer ("CEO") and founder and its Chief Financial Officer ("CFO"), defendants Ryan M.
21 Petersen ("Petersen") and Arthur F. Knapp, Jr. ("Knapp"), respectively, defendants shocked the
22 market by slowly revealing the truth about the Company's business health. First, on September
23 5, 2012, defendants cut revenue guidance for the second quarter of 2013 (ended on August 31,
24 2012). Defendants, however, failed to disclose the true reasons behind this reduction. Rather,
25 they attributed the downward guidance revision to supply constraints. Thus, the market was left
26 with the impression that the Company was forced to cut guidance because demand for the
27 Company's product offerings had simply overwhelmed available supply.

28

- 1 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1       4.      Then, on October 10, 2012, before the market opened, OCZ announced that it was
2   unable to file its Form 10-Q for the second quarter of 2013. On that day, defendants disclosed
3   that the Company would again revise its second quarter 2013 revenue significantly lower, and
4   that the Company now expected to report negative gross margins and a significant net loss for its
5   second quarter of 2013. The Company revealed that this delay and second revenue revision was
6   due to the improper accounting of "customer incentive programs," which the incoming CEO
7   stated the outgoing CEO had promised in order to bring in business. The Company also
8   disclosed that it had material weaknesses in its internal controls. Additionally, defendants
9   promised they would hold a conference call with investors to further explain all of these issues
10  on October 15, 2012, and that the Company would file its Company's Form 10-Q on that date.

11      5.      On October 11, 2012, defendants notified investors and the U.S. Securities and
12  Exchange Commission ("SEC") that the Company now required "additional time for compilation
13  and review to insure adequate disclosure of certain information" and that "the Company [could
14  not] currently estimate the exact filing date of the Form 10-Q for the quarter ended August 31,
15  2012." As of the time of this filing, the Company still has not filed its overdue quarterly filings,
16  causing it to become perilously close to being delisted from the NASDAQ.

17      6.      The bad news for the Company would continue. On October 31, 2012,
18  defendants issued a status update to investors whereby they acknowledged that they have
19  initiated "EOL [End of Life] procedures to discontinue approximately 150 product variations,
20  including *reducing the value category by approximately 80 percent*." Finally, on November 21,
21  2012, the Company announced in a Form 8-K that it received a letter from the SEC indicating
22  the SEC is conducting an investigation into OCZ's troubled financials. The Company also
23  received a subpoena from the SEC requesting certain documents and information relating to its
24  accounting improprieties.

25      7.      The revelations concerning the Company's improper accounting and its
26  indefinitely delayed financial filings exposed OCZ's true business health and caused its market
27  capitalization to plunge almost 80%, erasing more than $379 million in value. As a direct result
28  of the defendants' wrongdoing, the Company is now the subject of multiple federal securities

1  class action lawsuits (the "Securities Class Actions") filed in the U.S. District Court for the
2  Northern District of California. The Securities Class Actions pose the risk of hundreds of
3  millions of dollars in damages to the Company, which is already struggling to maintain its capital
4  position and meet its reporting requirements.

### JURISDICTION AND VENUE

6  8.  Jurisdiction is conferred by 28 U.S.C. §1332. Complete diversity among the
7  parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8  9.  This Court has jurisdiction over each defendant named herein because each
9  defendant is either a corporation that conducts business in and maintains operations in this
10  District, or is an individual who has sufficient minimum contacts with this District to render the
11  exercise of jurisdiction by the District courts permissible under traditional notions of fair play
12  and substantial justice.

13  10.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) the
14  Company is headquartered in this District; (ii) a substantial portion of the transactions and
15  wrongs complained of herein, including defendants' primary participation in the wrongful acts
16  detailed herein had an impact on this District; and (iii) defendants have received substantial
17  compensation in this District by doing business here and engaging in numerous activities that
18  had an effect in this District.

### INTRADISTRICT ASSIGNMENT

20  11.  This action is properly assigned to the San Francisco division of this Court.

### THE PARTIES

22  **Plaintiff**

23  12.  Plaintiff Clair Vanderschaaf has been a shareholder of OCZ since July 2012,
24  when he first purchased OCZ common stock. Thus, plaintiff owned the Company's stock at the
25  time of the wrongdoing complained of, has continuously been a shareholder since that time, and
26  is a current OCZ shareholder. Plaintiff is a citizen of Tennessee.

- 3 -

1 | **Nominal Defendant**

2       13.     Nominal defendant OCZ is a Delaware corporation with its principal place of
3 | business located at 6373 San Ignacio Avenue, San Jose, California. Thus, OCZ is a citizen of
4 | both Delaware and California. OCZ, founded in 2002, designs, manufactures, and distributes
5 | Solid-State Drives ("SSDs") and related computer components. OCZ specializes in high-speed
6 | memory and characterizes itself as a leader in the enterprise and consumer SSD markets, a
7 | technology that competes with traditional rotating magnetic hard disk drives. The Company sells
8 | its products directly to enterprise customers and original equipment manufacturers through its
9 | direct sales force and to other end customers through a channel of systems integrators,
10 | information technology, and fulfillment and retail distributors. At the time of this filing, OCZ
11 | common stock trades on the NASDAQ.

12 | **Defendants**

13       14.     Defendant Petersen was OCZ's CEO and a director from 2002 to September 2011;
14 | President from at least May 2010 to September 2011; and Chairman of the Company's Board of
15 | Directors (the "Board") from at least October 2010 to September 2011. Additionally, defendant
16 | Petersen founded OCZ. Defendant Petersen is named as a defendant in the Securities Class
17 | Actions that allege he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934
18 | ("Exchange Act"). Defendant Petersen knowingly, recklessly, or with gross negligence: (i) made
19 | improper statements in the Company's conference calls, press releases, and public filings
20 | concerning the Company's business prospects; (ii) caused the Company to fail to implement
21 | adequate internal controls and procedures to ensure the accuracy of the Company's disclosures;
22 | and (iii) failed to maintain reliable systems of financial controls to ensure compliance with
23 | GAAP. OCZ paid defendant Petersen the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Total |
|---|---|---|---|
| 2012 | $415,000 | $415,000 | $830,000 |

26 | Defendant Petersen is a citizen of California.

27       15.     Defendant Knapp was OCZ's CFO from December 2010 to August 2012.
28 | Defendant Knapp was also OCZ's Interim CFO from October 2010 to December 2010; Vice

- 4 -

1  President of Finance from March 2009 to October 2010; and CFO from November 2005 to
2  March 2009. Defendant Knapp is named as a defendant in the Securities Class Actions that
3  allege he violated sections 10(b) and 20(a) of the Exchange Act. Defendant Knapp knowingly,
4  recklessly, or with gross negligence: (i) made improper statements in the Company's conference
5  calls, press releases, and public filings concerning the Company's business prospects; (ii) caused
6  the Company to fail to implement adequate internal controls and procedures to ensure the
7  accuracy of the Company's disclosures; and (iii) failed to maintain reliable systems of financial
8  controls to ensure compliance with GAAP. OCZ paid defendant Knapp the following
9  compensation as an executive:

| Fiscal Year | Salary | Bonus | Total |
|---|---|---|---|
| 2012 | $275,000 | $100,000 | $375,000 |

12  Defendant Knapp is a citizen of California.

13  16.  Defendant Ralph H. Schmitt ("Schmitt") is OCZ's President and CEO and has
14  been since October 2012 and a director and has been since April 2011. Defendant Schmitt is
15  also a member of OCZ's Audit Committee and has been since at least August 2011. Defendant
16  Schmitt knowingly or recklessly: (i) reviewed and approved improper statements in the
17  Company's conference calls, press releases, and public filings concerning the Company's
18  business prospects; (ii) caused the Company to fail to implement adequate internal controls and
19  procedures to ensure the accuracy of the Company's disclosures; and (iii) failed to maintain
20  reliable systems of financial controls to ensure compliance with GAAP. OCZ paid defendant
21  Schmitt the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2012 | $31,333 | $328,295 | $359,628 |

24  Defendant Schmitt is a citizen of California.

25  17.  Defendant Adam J. Epstein ("Epstein") is OCZ's Lead Director and has been
26  since March 2012 and a director and has been since March 2010. Defendant Epstein is also a
27  member of OCZ's Audit Committee and has been since at least August 2011. Defendant Epstein

28

- 5 -

1 knowingly or recklessly: (i) reviewed and approved improper statements in the Company's
2 conference calls, press releases, and public filings concerning the Company's business prospects;
3 (ii) caused the Company to fail to implement adequate internal controls and procedures to ensure
4 the accuracy of the Company's disclosures; and (iii) failed to maintain reliable systems of
5 financial controls to ensure compliance with GAAP. OCZ paid defendant Epstein the following
6 compensation as a director:

7
8

| Fiscal Year | Fees Paid in Cash | Option Awards | Total |
|---|---|---|---|
| 2012 | $54,500 | $43,773 | $98,273 |

9 Defendant Epstein is a citizen of California.

10     18.    Defendant Richard L. Hunter ("Hunter") is an OCZ director and has been since
11 March 2010. Defendant Hunter is also a member of OCZ's Audit Committee and has been since
12 at least August 2011. Defendant Hunter knowingly or recklessly: (i) reviewed and approved
13 improper statements in the Company's conference calls, press releases, and public filings
14 concerning the Company's business prospects; (ii) caused the Company to fail to implement
15 adequate internal controls and procedures to ensure the accuracy of the Company's disclosures;
16 and (iii) failed to maintain reliable systems of financial controls to ensure compliance with
17 GAAP. OCZ paid defendant Hunter the following compensation as a director:

18
19

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2012 | $54,000 | $54,000 |

20 Defendant Hunter is a citizen of Texas.

21     19.    Defendant Russell J. Knittel ("Knittel") is an OCZ director and has been since
22 June 2010. Defendant Knittel is also Chairman of OCZ's Audit Committee and has been since at
23 least August 2011. Defendant Knittel knowingly or recklessly: (i) reviewed and approved
24 improper statements in the Company's conference calls, press releases, and public filings
25 concerning the Company's business prospects; (ii) caused the Company to fail to implement
26 adequate internal controls and procedures to ensure the accuracy of the Company's disclosures;
27
28

- 6 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  and (iii) failed to maintain reliable systems of financial controls to ensure compliance with

2  GAAP. OCZ paid defendant Knittel the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Total |
|---|---|---|
| 2012 | $50,250 | $50,250 |

5  Defendant Knittel is a citizen of California.

6      20.     The defendants identified in ¶¶14-16 are referred to herein as the "Officer

7  Defendants." The defendants identified in ¶¶14, 16-19 are referred to herein as the "Director

8  Defendants." The defendants identified in ¶¶16-19 are referred to herein as the "Audit

9  Committee Defendants." Collectively, the defendants identified in ¶¶14-19 are referred to herein

10  as the "Individual Defendants."

11  <center>**DUTIES OF THE INDIVIDUAL DEFENDANTS**</center>

12  **Fiduciary Duties**

13      21.     By reason of their positions as officers and/or directors of OCZ and because of

14  their ability to control the business and corporate affairs of OCZ, the Individual Defendants

15  owed and owe OCZ and its shareholders fiduciary obligations of trust, loyalty, good faith, and

16  due care, and were and are required to use their utmost ability to control and manage OCZ in a

17  fair, just, honest, and equitable manner. The Individual Defendants were and are required to act

18  in furtherance of the best interests of OCZ and its shareholders so as to benefit all shareholders

19  equally and not in furtherance of their personal interest or benefit. In addition, each officer and

20  director of the Company owes to OCZ and its shareholders the fiduciary duty to exercise good

21  faith and diligence in the administration of the affairs of the Company and in the use and

22  preservation of its property and assets.

23  **Additional Duties of the Audit Committee Defendants**

24      22.     In addition to their general fiduciary duties, the Audit Committee Defendants,

25  Epstein, Hunter, Knittel, and Schmitt, owed and owe specific additional duties to OCZ under the

26  Company's Audit Committee Charter, which has been in effect since at least August 2011.

27  According to the Audit Committee Charter, "[t]he primary purpose of the Committee is to

28  oversee the accounting and financial reporting processes of the Company and the audits of the

<center>- 7 -</center>

1 Company's financial statements." The Audit Committee duties include assisting the Board in
2 supervising the Company's compliance with legal and regulatory requirements, monitoring the
3 integrity of the Company financial statements, and policing the Company's internal controls and
4 procedures. The Audit Committee met five times in 2011 and four times in 2012.

5 **Control, Access, and Authority**

6     23.    The Individual Defendants, because of their positions of control and authority as
7 officers and/or directors of OCZ, were able to and did, directly and/or indirectly, exercise control
8 over the wrongful acts complained of herein, as well as the contents of the various public
9 statements issued by the Company.

10     24.    Because of their advisory, executive, managerial, and directorial positions with
11 OCZ, the Individual Defendants had access to non-public information about the Company's
12 operations. While in possession of this material, non-public information, these defendants made
13 improper representations regarding the Company's business prospects.

14     25.    At all times relevant hereto, each of the Individual Defendants was the agent of
15 each of the other Individual Defendants and of OCZ, and was at all times acting within the
16 course and scope of such agency.

17 **Reasonable and Prudent Supervision**

18     26.    To discharge their duties, the officers and directors of OCZ were required to
19 exercise reasonable and prudent supervision over the management, policies, practices, and
20 controls of the financial affairs of the Company. By virtue of such duties, the officers and
21 directors of OCZ were required to, among other things:

22         (a)    ensure that the Company was operated in a diligent, honest, and prudent
23 manner in compliance with all applicable laws, rules, and regulations;

24         (b)    ensure that the Company complied with its legal obligations and
25 requirements, including acting only within the scope of its legal authority and disseminating
26 truthful and accurate statements to the investing public;

27         (c)    remain informed as to how OCZ conducted its operations, and, upon
28 receipt of notice or information of imprudent or unsound conditions or practices, make

- 8 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  reasonable inquiry in connection therewith, and take steps to correct such conditions or practices
2  and make such disclosures as necessary to comply with the securities laws;

3          (d)    conduct the affairs of the Company in an efficient, business-like manner
4  so as to make it possible to provide the highest quality performance of its business, to avoid
5  wasting the Company's assets, and to maximize the value of the Company's stock; and

6          (e)    properly and accurately guide investors and analysts as to the true
7  financial condition of the Company at any given time, including making accurate statements
8  about the Company's current and future business prospects.

9  **Breaches of Duties**

10         27.    Each Individual Defendant, by virtue of his position as an officer and/or director,
11  owed and owe to the Company and to its shareholders the fiduciary duty of loyalty and the
12  exercise of due care and diligence in the management and administration of the affairs of the
13  Company, as well as in the use and preservation of its property and assets. The conduct of the
14  Individual Defendants complained of herein involves a knowing and culpable violation of their
15  obligations as officers and directors of OCZ, the absence of good faith on their part, and a
16  reckless disregard for their duties to the Company and its shareholders that the Individual
17  Defendants were aware or should have been aware posed a risk of serious injury to the
18  Company. The conduct of the Individual Defendants who were also officers and/or directors of
19  the Company have been ratified by the remaining Individual Defendants who collectively
20  comprised all of OCZ's Board.

21         28.    The Individual Defendants breached their duty of loyalty by allowing defendants
22  to cause, or by themselves causing, the Company to make improper statements regarding its
23  business prospects. Due to these defendants' illegal actions and course of conduct, the Company
24  wasted its corporate assets and is now the subject of the Securities Class Actions. As a result,
25  OCZ has expended, and will continue to expend, significant sums of money.

26               **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

27         29.    In committing the wrongful acts alleged herein, the Individual Defendants have
28  pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

- 9 -

1 and conspired with one another in furtherance of their common plan or design. In addition to the
2 wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants
3 further aided and abetted and/or assisted each other in breaching their respective duties.

4     30. During all times relevant hereto, the Individual Defendants, collectively and
5 individually, initiated a course of conduct that was designed to and did: (i) deceive the investing
6 public, including shareholders of OCZ, regarding the Individual Defendants' management of
7 OCZ's operations and the prospects of the Company's business; and (ii) enhance their executive
8 and directorial positions at the Company and the profits, power, and prestige that they enjoyed as
9 a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct,
10 the Individual Defendants, collectively and individually, took the actions set forth herein.

11     31. The Individual Defendants engaged in a conspiracy, common enterprise, and/or
12 common course of conduct. During this time, the Individual Defendants caused the Company to
13 issue improper financial guidance.

14     32. The purpose and effect of the Individual Defendants' conspiracy, common
15 enterprise, and/or common course of conduct was, among other things, to disguise the Individual
16 Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust
17 enrichment; and to conceal adverse information concerning the Company's operations, financial
18 condition, and future business prospects.

19     33. The Individual Defendants accomplished their conspiracy, common enterprise,
20 and/or common course of conduct by causing the Company to purposefully or recklessly release
21 improper statements. Because the actions described herein occurred under the authority of the
22 Board, each of the Individual Defendants was a direct, necessary, and substantial participant in
23 the conspiracy, common enterprise, and/or common course of conduct complained of herein.

24     34. Each of the Individual Defendants aided and abetted and rendered substantial
25 assistance in the wrongs complained of herein. In taking such actions to substantially assist the
26 commission of the wrongdoing complained of herein, each Individual Defendant acted with
27 knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that
28 wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

- 10 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

**OVERVIEW**

2   35.  OCZ designs, manufactures, and distributes SSDs to personal computer
3 manufacturers, retailers, and end user consumers. The Company is focused on two specific
4 markets: (i) customers who want to replace old hard disk drives with SSDs; and (ii) technology
5 solution providers who require SSDs for their data centers.

6   36.  Over the last several quarters, the Company has been struggling with weaker-
7 than-expected demand for its products. This negative trend in the Company's business prospects
8 led to deterioration in its balance sheet and reduced revenue. Instead of acknowledging the
9 Company's challenges, however, defendants caused the Company to conceal its true business
10 health with unattainable bullish guidance. These positive statements were bolstered by the
11 defendants' aggressive sales strategy, which was widely based on massive customer discounts in
12 the form of rebates.

13   37.  This scheme, however, was short lived, and only postponed the market's
14 realization of the Company's true business health. Even worse, this scheme would backfire on
15 the defendants. Given the fact that the Company's stated revenue recognition policy was to
16 record "product sales net of ... product rebates," it was only a matter of time that the market
17 discovered that defendants were cutting the Company's profits with the various discounts that
18 made up the Company's "customer incentive programs."

19

**IMPROPER STATEMENTS**

20   38.  The first improper statement was reviewed and approved by defendants Epstein,
21 Hunter, Knittel, and Schmitt on July 10, 2012, when OCZ issued a press release reporting its first
22 quarter 2013 financial results, for the quarter ended May 31, 2012. For the quarter, the Company
23 reported net loss of $6.3 million, or ($0.09) diluted earnings per share ("EPS") and net revenue
24 of $113.6 million, as compared to net loss of $9.1 million, or ($0.20) diluted EPS and net
25 revenue of $73.8 million, for the same period a year ago. This press release also provided the
26 following bullish revenue guidance:

27

28

- 11 -

1

*Business Outlook and Commentary:*

2

3

OCZ expects *net revenue for its second fiscal quarter* ending August 31, 2012 (Q2'13), to be in the *range of $130 to $140 million*.

4

5

6

*OCZ expects net revenue for its fiscal year ending February 28, 2013 (FY'13) to be in the range of $630 to $700 million. This represents a growth rate of approximately 80% at the midpoint; we expect, based on historical trends, revenue to be weighted to the second half of the year, with approximately 60% to 65% of revenue to occur in the second half of the year.*

7

8

9

*Non-GAAP gross margins are expected to increase in Q213 and to exit the year in excess of 30%, with typical sequential gross margin increases of 100 to 250 basis points per quarter throughout the fiscal year, subject to changes in product mix as the SSD landscape continues to evolve.*

10

11

*OCZ expects non-GAAP operating expenses for Q2'13, to be in the range of $38 to $41 million with expenses exiting the year at between $43 and $47 million per quarter, as OCZ continues to invest in its ongoing growth objectives.*

12

13    39.    During a conference call that same day following the earnings release, defendant

14    Petersen reiterated the Company's aggressive guidance.  During the conference call, defendant

15    Petersen touted:

16

17

18

19

20

21

22

*Moving to guidance, we expect our net revenue in Q2 to be in the range of $130 million to $140 million* and $630 million to $700 million for the year. To add clarity here, as in years past, we expect 60% to 65% of our revenue will occur in the second half of the year. We expect sequential gross margin increases with typical increases in the 100 to 250 basis points per quarter range throughout the remainder of the fiscal year and to exit the year in excess of 30%. This is, course, subject to any changes in product mix as the SSD landscape continues to evolve. *We expect non-GAAP operating expenses to be in the range of $38 million to $41 million for Q2 and to exit the year between $43 million and $47 million as we continue to aggressively invest in building out the business and strengthening our leadership position.*

23    Concerning profit margins, defendant Petersen stated:

24

25

26

*It is our expectation that margins will continue to increase as we transition to our newer-generation products, and we're confident that our gross margins will see an incremental expansion as a result of increasing purchasing scale and improving product mix.*

27    Concerning purported growth in the Company's customer base, defendant Petersen stated:

28

- 12 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

In regards to growth of our customer base, I'll simply state this time that we're extremely pleased with the continuing development. *From consumers to [original equipment manufacturers] and enterprises, we continue to gain meaningful traction. Our transition into the [original equipment manufacturers] and enterprise arenas continues to go well, as we add numerous clients each quarter.*

40. During that same July 10, 2012 conference call, defendant Knapp added that the defendants were "very pleased with the continued record revenues that [they] reported for the first quarter, and the demand [they were then] seeing for [OCZ's] new products." In truth, the Company's demand had substantially weakened. This negative trend in the Company's business, however, was concealed by the temporary boost in sales provided by the defendants' customer incentive programs. Defendant Knapp's positive assurances came just a month before the Company would disclose that he would be replaced as CFO.

## REASONS THE STATEMENTS WERE IMPROPER

41. The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a) the Company was providing extraordinary customer incentives which impacted its revenue recognition and negatively impacted profits;

(b) the Company was improperly accounting for customer incentive programs in violation of GAAP;

(c) the Company lacked adequate internal and financial controls; and

(d) that, as a result of the foregoing, the Company's statements were improper at all relevant times.

## THE TRUTH SLOWLY EMERGES

42. Signs of trouble at OCZ emerged on September 5, 2012, when the Company issued a press release announcing lower than expected revenues for the second quarter of fiscal 2013. Contrary to the bullish statements and guidance provided on July 10, 2012, the press release now stated that the "Company expect[ed] preliminary *revenue for the second fiscal quarter of 2013 to be approximately $110 to 120 million compared to the previously guided*

- 13 -

1   *revenue range of $130 to $140 million*." This reduction in guidance did not reveal the
2   Company's business health, however, as the defendants failed to disclose the true reasons behind
3   the reduced, but still-overstated, guidance.

4       43.     The press release quoted defendant Petersen explaining that, *"[d]espite achieving*
5   *bookings in excess of our expectations for our second fiscal quarter, we were not able to meet*
6   *our previously stated revenue guidance due primarily to constraints in NAND flash supply*."
7   Defendant Petersen added that, "[d]uring the month of August [the Company] experienced a
8   significant shortage on certain NAND flash components, based on industry wide tightening of
9   supply, leaving OCZ with an undersupply of the 2xnm MLC NAND used in our Vertex and
10   Agility Line of products." Thus, defendant Petersen blamed the Company's poor financial results
11   on supply constraints, a signal that business going forward would be strong.

12       44.     During the earnings conference call held later that day, defendant Petersen
13   continued this mantra, adding, *"[W]e have more than sufficient demand for our products....*
14   *We really do not have any demand issues. We have an issue with too much demand, but not*
15   *too little*." Defendants Pedersen further stated that "*new bookings within the quarter were well*
16   *in excess [of the prior] quarter. That leaves [the Company] with a really insurmountable*
17   *backlog, right now. Which is, both good and bad*."

18       45.     Less than two weeks later, on September 17, 2012, OCZ announced that
19   defendant Petersen had resigned as the Company's CEO effective immediately. There was no
20   previous mention that defendant Petersen might resign.

21       46.     Then, on October 10, 2012, OCZ issued a press release announcing that the
22   quarterly reporting of its 10-Q filing for the second quarter of fiscal year 2013 would be delayed.
23   This press release disclosed the issues associated with the Company's "customer incentive
24   programs," which were not properly and timely accounted for due to a "material weakness" in
25   the Company's internal controls. The press release stated as follows:

26         OCZ Technology Group, Inc., a leading provider of high-performance solid-state
            drives (SSDs) for computing devices and systems, today announced that it will
27       *file a Form 12b-25, Notification of Late Filing, with the Securities and*
            *Exchange Commission that allows the Company to extend the deadline to file*
28

<div align="center">- 14 -</div>

*its Form 10-Q for the second quarter of fiscal year 2013 (Q2'13)*, which ended on August 31, 2012. With this extension, if the Form 10-Q is filed by October 15, 2012, the Form 10-Q will be deemed to be timely filed.

The Company's financial statements are still under review. *The Q2'13 revenue will be materially lower than the September 5th preliminary revenue range of $110 to $120 million. This new revenue estimate and filing delay is principally due to the impact of customer incentive programs* which were discovered subsequent to the preliminary announcement during the normal close process, and *which the Company will be reporting as a material OCZ in its Form 10-Q.* The Company also expects to report negative gross margins and a significant net loss for Q2'13.

47. During an earnings conference call held later that day, defendants reiterated that the revised revenue guidance issued on September 5, 2012, for the most recent quarter "cannot be relied upon" purportedly due to "customer incentives that were in excess of what was normal and customary in the past." Defendants explained that the Company would be delaying its SEC filings to ensure a "proper accounting treatment has been applied to" the massive discounts that were issued to customers.

48. OCZ's newly appointed CEO, defendant Schmitt, stated during the conference call that, defendants "are here to generate value for [OCZ's] shareholders and [they] have failed at that mission." Defendant Schmitt admitted that the Company had "lost credibility." Moreover, defendant Schmitt disclosed the fact that the Company's cash position had declined, forcing it to access a credit facility. Adding to the bad news, defendant Schmitt also stated, without elaboration, that the Company's inventory was bloated and could require write-downs that would be detailed in the Company's second quarter 2013 financial report to be issued on October 15, 2012.

49. Benchmark Co. analyst Gary Mobley wrote in a note to clients on October 10, 2012, stating that "*OCZ has turned into a train wreck, to put it succinctly.*" According to Mr. Mobley, the Company under defendant Petersen's leadership had "tried to gain market share by boosting incentive programs and lost sight of how this would impact second-quarter revenue." *Forbes* concluded that these negative revelations about the Company's business health "*all adds up to a stock you really don't want to own.*"

- 15 -

1        50.     The next day, on October 11, 2012, the Company announced that it would not file
2  its Form 10-Q as defendant Schmidt previously promised, and instead that it " cannot currently
3  estimate the exact filing date of the Form 10-Q for the quarter ended August 31, 2012." The
4  Company's quarterly reporting has been delayed indefinitely.

5        51.     Less than a week later, on October 17, 2012, OCZ issued a press release
6  announcing that because of the delayed filing with the SEC of the Form 10-Q for the period
7  ending August 31, 2012, the Company received a letter from NASDAQ indicating that the
8  Company is not in compliance with the filing requirements for continued listing under NASDAQ
9  Listing Rule 5250(c). The NASDAQ letter notes that the Company is required to submit a plan
10  to regain compliance with NASDAQ's filing requirements for continued listing within sixty
11  calendar days of the date of the NASDAQ notification letter. As such, the Company's listing
12  with the NASDAQ is in jeopardy.

13       52.     On October 31, 2012, the Individual Defendants issued a status update to
14  investors whereby they acknowledged they have initiated "EOL [End of Life] procedures to
15  discontinue approximately 150 product variations, including *reducing the value category by*
16  *approximately 80 percent*."

17       53.     Shortly thereafter, on November 21, 2012, the Company announced in a Form 8-
18  K that it received a letter from the SEC indicating the SEC is conducting an investigation. The
19  Company also received a subpoena from the SEC requesting certain documents and information
20  relating to the press releases detailed above and the financial reporting for customer incentive
21  programs.

22       54.     As the public learned about OCZ's instability and true business health, the
23  Company's market capitalization plunged almost 80%, erasing more than $379 million in value

24                                **OCZ'S GAAP VIOLATIONS**

25       55.     Financial statements filed with the SEC are required to comply with GAAP.
26  GAAP are those principles recognized by the accounting profession as the conventions, rules,
27  and procedures necessary to define accepted accounting practice at a particular time. SEC
28  Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that *financial statements filed with the SEC*

- 16 -

1  *which are not prepared in compliance with GAAP are presumed to be misleading* and
2  inaccurate, despite footnote or other disclosure.

3      56.    Defendants Petersen, Knapp, Schmitt, Epstein, Hunter, and Knittel damaged the
4  Company by failing to properly account for customer incentives in various public statements
5  disseminated to the market in violation of GAAP. In so doing, these defendants manipulated
6  OCZ's earnings and financial position. Defendants Petersen, Knapp, Schmitt, Epstein, Hunter,
7  and Knittel's wrongdoing is at least partly due to the Company's admitted "material weakness" in
8  its internal controls relating to properly accounting for the discounts offered to customers.

9      57.    GAAP required OCZ to recognize the cost of sales incentives on the date at
10  which the related revenue is recognized by OCZ or the date at which the sales incentive is
11  offered. Accounting Standards Codification ("ASC") 605-50-25-3. Upon the later of one of the
12  preceding triggering events, OCZ was required to accrue a liability for the customer incentives
13  that it could "reasonably" and "reliably" estimate. Additionally, if OCZ was not able to
14  reasonably and reliably estimate the liability for the customer incentives, it was required to
15  accrue a liability for the "maximum" amount of the potential amount of incentive exposure.
16  ASC 605-50-25-4. OCZ failed to follow this basic GAAP premise of recording such obligations
17  on their balance sheet and failed to offset the applicable revenue stream with the corresponding
18  accrual timely.

19      58.    OCZ's inept control structure also enabled defendants to inflate their revenue
20  guidance on certain sales that included massive customer incentives. GAAP required that an
21  adjustment of the selling price of OCZ's products in which it provides customer incentives be
22  recorded as a reduction in revenue.    ASC 605-50-45-1. GAAP further required that
23  consideration provided by OCZ to its customers be presumed a reduction of the selling price of
24  OCZ's products and, therefore, should have been characterized as a reduction of revenue when
25  recognized in the Company's income statement.    ASC 605-50-45-2.    Without properly
26  accounting for its customer incentive programs, the Company's financial statements, including,
27  but not limited to, the defendants' guidance, was improper.

28

- 17 -

1

**DAMAGES TO OCZ**

2    59.    As a result of the Individual Defendants' improprieties, OCZ disseminated
3  improper, public statements concerning the Company's business prospects.    These improper
4  statements have demolished OCZ's credibility, corporate image, and goodwill as reflected by the
5  Company's over $379 million, or almost 80% market capitalization loss.    For at least the
6  foreseeable future, OCZ will suffer from what is known as the "liar's discount," a term applied to
7  the stocks of companies which have been implicated in improper behavior and have misled the
8  investing public, such that OCZ's ability to raise equity capital or debt on favorable terms in the
9  future is now impaired.

10    60.    Further, as a direct and proximate result of the Individual Defendants' actions,
11  OCZ has expended, and will continue to expend, significant sums of money.    Such expenditures
12  include, but are not limited to:

13        (a)    costs incurred in investigating and defending OCZ and certain officers and
14  directors in the Securities Class Actions;

15        (b)    costs incurred from paying any potential settlement or adverse judgment in
16  the Securities Class Actions;

17        (c)    costs incurred from internal investigations into the accounting impact
18  caused by the various customer incentive programs;

19        (d)    costs incurred as a result of any potential restatement of the Company's
20  financial statements due to the improper accounting for the customer incentive programs;

21        (e)    costs incurred from responding to NASDAQ's investigation into the
22  Company's late filings and continued listing;

23        (f)    costs incurred from responding to the SEC's investigation into the
24  Company's financial reporting for customer incentive programs;

25        (g)    costs incurred from the write-down of the Company's inventory;

26        (h)    costs incurred as a result of the Company being forced to access a credit
27  facility; and

28

- 18 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    (i)    costs incurred from compensation and benefits paid to the defendants who
2  have breached their duties to OCZ, including, but not limited to, the severance packages given to
3  defendants Petersen and Knapp.

4                    **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

5    61.    Plaintiff brings this action derivatively in the right and for the benefit of OCZ to
6  redress injuries suffered, and to be suffered, by OCZ as a direct result of breaches of fiduciary
7  duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof,
8  by the Individual Defendants. OCZ is named as a nominal defendant solely in a derivative
9  capacity. This is not a collusive action to confer jurisdiction on this Court that it would not
10  otherwise have.

11    62.    Plaintiff will adequately and fairly represent the interests of OCZ in enforcing and
12  prosecuting its rights.

13    63.    Plaintiff was a shareholder of OCZ at the time of the wrongdoing complained of,
14  has continuously been a shareholder since that time, and is a current OCZ shareholder.

15    64.    The current Board of OCZ consists of the following four individuals: defendants
16  Epstein, Hunter, Knittel, and Schmitt. Plaintiff has not made any demand on the present Board
17  to institute this action because such a demand would be a futile, wasteful, and useless act, as set
18  forth below.

19  **Demand Is Excused Because a Majority of the Current Board Faces a Substantial**
20  **Likelihood of Liability for Their Misconduct**

21    65.    Defendants Epstein, Hunter, Knittel, and Schmitt, as members of the Audit
22  Committee, reviewed and approved the improper statements and misleading financial guidance
23  alleged herein. The Audit Committee met five times in 2011 and four times in 2012. Thus,
24  defendants Epstein, Hunter, Knittel, and Schmitt, as required by the Audit Committee Charter,
25  had access to and discussed information concerning demand for the Company's products and the
26  impact of the massive discounts issued to customers prior to reviewing and approving improper
27  statements concerning the Company's business prospects. Despite the fact that "[t]he primary
28  purpose of the Committee [was] to oversee the accounting and financial reporting processes of

- 19 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1 the Company and the audits of the Company's financial statements," defendants Epstein, Hunter,
2 Knittel, and Schmitt knowingly or recklessly: (i) failed to properly account for the Company's
3 customer incentive programs; and (ii) failed to maintain reliable systems of financial controls to
4 ensure compliance with GAAP. As Audit Committee members, defendants Epstein, Hunter,
5 Knittel, and Schmitt were held to higher standards of expertise. Furthermore, defendant Knittel
6 was classified by the Board as an "audit committee financial expert" as the term is defined in the
7 SEC's rules and regulations. Accordingly, the Audit Committee Defendants are responsible for
8 knowingly or recklessly allowing the defendants' manipulation of the Company's financial
9 position. The Audit Committee Defendants breached their fiduciary duty of loyalty and good
10 faith because they participated in the wrongdoing described herein. As a result, the Audit
11 Committee Defendants face a substantial likelihood of liability for their breach of fiduciary
12 duties. Any demand upon them is futile.

13       66.     Defendants Epstein, Hunter, Knittel, and Schmitt, all four members of the Board,
14 breached their duty of loyalty by failing to implement adequate internal controls and procedures
15 to ensure the accuracy of the Company's disclosures. Defendants Epstein, Hunter, Knittel, and
16 Schmitt also failed to prevent the other Individual Defendants from committing this wrongdoing.
17 As a result of defendants Epstein, Hunter, Knittel, and Schmitt's course of conduct, the Company
18 is now the subject of the Securities Class Actions.

19       67.     The acts complained of constitute violations of the fiduciary duties owed by
20 OCZ's officers and directors and these acts are incapable of ratification.

21       68.     OCZ has been and will continue to be exposed to significant losses due to the
22 wrongdoing complained of herein, yet the Individual Defendants and current Board have not
23 filed any lawsuits against themselves or others who were responsible for that wrongful conduct
24 to attempt to recover for OCZ any part of the damages OCZ suffered and will suffer thereby.

25       69.     Plaintiff has not made any demand on the other shareholders of OCZ to institute
26 this action since such demand would be a futile and useless act for at least the following reasons:

27           (a)     OCZ is a publicly held company with over 67.6 million shares outstanding
28 and thousands of shareholders;

- 20 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1           (b)     making demand on such a number of shareholders would be impossible

2 for plaintiff who has no way of finding out the names, addresses, or phone numbers of

3 shareholders; and

4           (c)     making demand on all shareholders would force plaintiff to incur

5 excessive expenses, assuming all shareholders could be individually identified.

6 <div align="center">**COUNT I**</div>

7 <div align="center">**Against the Individual Defendants for Breach of Fiduciary Duty**</div>

8      70.     Plaintiff incorporates by reference and realleges each and every allegation

9 contained above, as though fully set forth herein.

10     71.     The Individual Defendants owed and owe OCZ fiduciary obligations. By reason

11 of their fiduciary relationships, the Individual Defendants owed and owe OCZ the highest

12 obligation of good faith, fair dealing, loyalty, and due care.

13     72.     Each of the Individual Defendants violated and breached their fiduciary duties.

14 More specifically, the Individual Defendants violated their duty of loyalty by creating a culture

15 of lawlessness within OCZ, and/or consciously failing to prevent to Company from engaging in

16 the unlawful acts complained of herein.

17     73.     Defendants Petersen and Knapp, as Officer Defendants, knowingly, recklessly, or

18 with gross negligence: (i) made improper statements in the Company's conference calls, press

19 releases, and public filings concerning the Company's: business prospects; (ii) caused the

20 Company to fail to implement adequate internal controls and procedures to ensure the accuracy

21 of the Company's disclosures; and (iii) failed to maintain reliable systems of financial controls to

22 ensure compliance with GAAP.

23     74.     The Director Defendants, Petersen, Schmitt, Epstein, Hunter, and Knittel, as

24 directors of the Company, owed OCZ the highest duty of loyalty. The Director Defendants

25 knowingly or recklessly breached their duty of loyalty by failing to ensure that reliable systems

26 of financial controls and reporting were in place at the Company.

27     75.     The Audit Committee Defendants, Epstein, Hunter, Knittel, and Schmitt,

28 breached their fiduciary duty of loyalty by approving the statements and financial guidance

<div align="center">- 21 -</div>

1 described herein that were made during their tenure on the Audit Committee, which they knew or
2 were reckless in not knowing were improper. The Audit Committee Defendants completely and
3 utterly failed in their duty of oversight, and defendants Epstein, Hunter, Knittel, and Schmitt
4 failed in their duty to appropriately review financial results, as required by the Audit Committee
5 Charter in effect at the time.

6    76.    As a direct and proximate result of the Individual Defendants' breaches of their
7 fiduciary duties, OCZ has sustained substantial damages, including direct monetary damages and
8 damages to its reputation and goodwill in the capital markets. As a result of the misconduct
9 alleged herein, the Individual Defendants are liable to the Company.

10    77.    Plaintiff, on behalf of OCZ, has no adequate remedy at law.

11                                   **COUNT II**

12          **Against the Individual Defendants for Waste of Corporate Assets**

13    78.    Plaintiff incorporates by reference and realleges each and every allegation
14 contained above, as though fully set forth herein.

15    79.    As a result of the misconduct described above, the Individual Defendants have
16 wasted corporate assets by forcing the Company to expend valuable resources in defending itself
17 in the Securities Class Actions that they brought on with their improper statements. In addition,
18 the Individual Defendants have caused OCZ to waste its assets by paying improper
19 compensation and bonuses to certain of its executive officers and directors that breached their
20 fiduciary duty, including, but not limited to, the severance packages given to defendants Petersen
21 and Knapp.

22    80.    As a result of the waste of corporate assets, the Individual Defendants are liable to
23 the Company.

24    81.    Plaintiff, on behalf of OCZ, has no adequate remedy at law.

25                                  **COUNT III**

26           **Against the Individual Defendants for Unjust Enrichment**

27    82.    Plaintiff incorporates by reference and realleges each and every allegation
28 contained above, as though fully set forth herein.

- 22 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    83.    By their wrongful acts and omissions, the Individual Defendants were unjustly
2  enriched at the expense of and to the detriment of OCZ. The Individual Defendants were
3  unjustly enriched as a result of the compensation and director remuneration they received while
4  breaching fiduciary duties owed to OCZ.

5    84.    Plaintiff, as a shareholder and representative of OCZ, seeks restitution from these
6  defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits,
7  and other compensation obtained by these defendants, and each of them, from their wrongful
8  conduct and fiduciary breaches.

9    85.    Plaintiff, on behalf of OCZ, has no adequate remedy at law.

10                                **PRAYER FOR RELIEF**

11    WHEREFORE, plaintiff, on behalf of OCZ, demands judgment as follows:

12    A.    Against all of the defendants and in favor of the Company for the amount of
13  damages sustained by the Company as a result of the defendants' breaches of fiduciary duty,
14  waste of corporate assets, and unjust enrichment;

15    B.    Directing OCZ to take all necessary actions to reform and improve its corporate
16  governance and internal procedures to comply with applicable laws and to protect OCZ and its
17  shareholders from a repeat of the damaging events described herein, including, but not limited to,
18  putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or
19  Articles of Incorporation and taking such other action as may be necessary to place before
20  shareholders for a vote of the following Corporate Governance Policies:

21        1.    a proposal to strengthen the Company's accounting controls;

22        2.    a proposal to strengthen the Company's disclosure controls;

23        3.    a proposal to strengthen the Company's controls monitoring various
24  customer incentive programs;

25        4.    a proposal to strengthen the Company's controls policing inventory
26  levels;

27

28
                                    - 23 -

1          5.     a proposal to strengthen the Board's supervision of operations and

2 develop and implement procedures for greater shareholder input into the policies and guidelines

3 of the Board; and

4          6.     a provision to permit the shareholders of OCZ to nominate at least two

5 candidates for election to the Board;

6     C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and

7 state statutory provisions sued hereunder, including attaching, impounding, imposing a

8 constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or

9 their other assets so as to assure that plaintiff on behalf of OCZ has an effective remedy;

10     D.     Awarding to OCZ restitution from defendants, and each of them, and ordering

11 disgorgement of all profits, benefits, and other compensation obtained by defendants;

12     E.     Awarding to plaintiff the costs and disbursements of the action, including

13 reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

14     F.     Granting such other and further relief as the Court deems just and proper.

15                               **JURY DEMAND**

16     Plaintiff demands a trial by jury.

17 Dated: November 29, 2012                  ROBBINS UMEDA LLP
                                       BRIAN J. ROBBINS

18                                        GEORGE C. AGUILAR
                                       LAUREN N. OCHENDUSZKO

19                                        MICHAEL J. NICOUD

20

21                                           BRIAN J. ROBBINS

22                               600 B Street, Suite 1900
                              San Diego, CA 92101

23                               Telephone: (619) 525-3990
                              Facsimile: (619) 525-3991

24                               brobbins@robbinsumeda.com
                              gaguilar@robbinsumeda.com

25                               lochenduszko@robbinsumeda.com
                              mnicoud@robbinsumeda.com

26

27                               THE WARNER LAW FIRM
                              PAUL T. WARNER

28                               11123 McCracken Circle, Suite A
                              Cypress, TX 77429

- 24 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

2

Telephone: (281) 664-7777
Facsimile: (281) 664-7774
pwarner@warner-law.net

3

Attorneys for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  810053

28

- 25 -

## VERIFICATION

I, Clair Vanderschaaf, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: 11/22/2012

CLAIR VANDERSCHAAF